THE ULSTER AND DELAWARE RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 28927. Promulgated January 8, 1932.

*James W. Carmalt, Esq.*, and *A. Kaplin, Esq.*, for the petitioner.
*E. C. Algire, Esq.*, for the respondent.

OPINION.

TRAMMELL: The principal issue involved in this case is whether or not the respondent erred in including in the petitioner's income for 1920 the amount of $47,086.62 as profit or income derived from the

adjustment made with the Director General of Railroads on account of materials and supplies. The amount stated represents the excess over cost to the petitioner of materials and supplies returned by the Director General, which the petitioner charged to expense and deducted from income, as determined by the respondent. Said amount so determined by the respondent as representing excess over cost was included in the petitioner's income in computing the deficiency for the taxable year 1920.

On January 1, 1918, the petitioner turned over to the Director General of Railroads its various railroad properties, including the materials and supplies then on hand, which were inventoried as of December 31, 1917, at a total cost to the petitioner of $189,725.48. The parties are in agreement as to this amount.

On March 1, 1920, at the termination of Federal control, the Director General returned to petitioner its properties, including the materials and supplies on hand inventoried as of that date at a cost to the Director General of $173,548.36, not including fuel. The parties are also in agreement as to this amount. Said inventory was taken into the petitioner's accounts and charged to expense as the materials and supplies were used.

The Director General and the petitioner had not entered into any contract during the period of Federal control, but in May, 1921, they negotiated a settlement of the petitioner's claims arising out of Federal control on the basis of the standard form of contract, which provided in section 9 (b) as follows:

At the end of Federal control the Director General shall return to the Company all uncollected accounts received by him from the Company and also materials and supplies equal in quantity, quality and relative usefulness to that of the materials and supplies which he received and to the extent that the Director General does not return such materials and supplies he shall account for the same at prices prevailing at the end of Federal control. To the extent that the Company receives materials and supplies in excess of those delivered by it to the Director General it shall account for the same at the prices prevailing at the end of Federal control, and the balance shall be adjusted in cash.

On May 4, 1921, as a result of the negotiations theretofore carried on, the Director General and the petitioner had agreed on the settlement of all claims except that of the petitioner for the amount claimed to be due it for materials and supplies. On May 5, 1921, the parties agreed to a lump-sum settlement of $390,000, to be paid to the petitioner by the Director General, which included the petitioner's claim for shortages of materials and supplies.

Here arises the first disagreement between the respondent and the petitioner respecting the facts. The respondent contends, and on that basis computed the deficiency for 1920, that as a result of the lump-sum settlement the Director General paid to the petitioner

the sum of $98,000 for shortages of materials and supplies. The allocation by the respondent of that amount of the lump-sum settlement to materials and supplies is admitted to rest upon the similar allocation made by the Director General upon his books, and in support of his determination the respondent in his brief sets up a comparison of the difference in the various accounts as they appeared upon the books of the petitioner and of the Director General. Careful consideration of those accounts discloses, in our opinion, that neither party attempted to allocate the lump-sum settlement of $390,000 in its accounts so as to reflect the actual facts of the final agreement, but the allocation made by each was a mere matter of bookkeeping convenience.

However, the record establishes, and we have so found, that on or prior to May 4, 1921, the Director General and the petitioner had agreed upon the amount to be paid in settlement of each of the petitioner's claims, except that for shortages of materials and supplies. The aggregate of the amounts so agreed upon, subtracted from the amount of the lump-sum settlement made on May 5, 1921, leaves only the amount of $89,040.54 to be allocated to the settlement of the petitioner's claim for shortages of materials and supplies. This is the amount which the petitioner now contends is a proper allocation, and we agree with its contention on this point.

The petitioner claimed as due to it from the Director General on account of shortages in materials and supplies the net amount of $119,951.90, computed as follows: The shortages by units at prices prevailing on March 1, 1920, amounted to $160,207.72, and the overages by units at prices of the same date amounted to $40,255.82, leaving the net balance of $119,951.90 which the petitioner claimed to be due it for shortages. It is apparent that in the process of this settlement the petitioner in effect paid the Director General for the overages, by means of a credit, as effectively as if the Director General had first paid the petitioner the full amount due for shortages and the petitioner had thereupon paid to the Director General the full amount due to him for the overages. Nor is such result changed by the fact that the Director General settled the petitioner's net claim for shortages by the payment of an amount less than that claimed.

The petitioner having in effect purchased the overages from the Director General, for which it paid at March 1, 1920, prices, this item should be eliminated from the Director General's inventory in determining the cost to the petitioner of the materials and supplies returned to it in kind by the Director General. Since the respondent did not take this item into consideration in computing the deficiency, his determination must be modified accordingly.

The parties are agreed that the Director General's inventory of materials and supplies returned in kind as of March 1, 1920, should be reduced from $173,548.36 to $140,999.98. This results from the respondent's action in deducting from the inventory value (1) items included in the inventory but missing, in the amount of $4,121.21, and (2) items on hand at December 31, 1917, which were not included in the petitioner's inventory but which were included in the Director General's inventory of March 1, 1920, in the amount of $28,427.27, making the total deduction for these two items of $32,548.48, recognized by the respondent.

Giving effect to the adjustments hereinabove indicated, the amount charged to expense in excess of the cost to the petitioner of the materials and supplies returned by the Director General should be recomputed as follows:

| | | |
|---|---:|---:|
| Director General's inventory of March 1, 1920, and taken into petitioner's accounts | | $173,548.36 |
| Reduced by: | | |
| Items included but missing | $4,121.21 | |
| Items on hand on Dec. 31, 1917, but not included in petitioner's inventory and included in Mar. 1, 1920, inventory | 28,427.27 | |
| Items of overages included in March 1, 1920, inventory but paid for by petitioner | 40,255.82 | |
| | | 72,804.30 |
| March 1, 1920, inventory value of similar units returned in kind by Director General | | 100,744.06 |
| Cash paid by Director General for shortages | | 89,040.54 |
| | | 189,784.60 |
| Value of petitioner's inventory Dec. 31, 1917 | | 189,725.48 |
| Excess over cost | | 59.12 |
| Deduct: Proportion of materials and supplies estimated to be charged to additions and betterments $59.12 × 4.44% | | 2.63 |
| Issued for maintenance and charged to expense in excess of cost | | 56.49 |

The respondent erred in disallowing $47,086.62 of the amount claimed by petitioner as a deduction for materials and supplies used during the year 1920. The amount which should be disallowed as representing the sum charged to expense in excess of cost of such materials to petitioner is $56.49. See *Terminal Railroad Association of St. Louis*, 17 B. T. A. 1135, and *Chicago Junction Railways, etc., Co.* v. *United States*, 52 Fed. (2d) 906.

With regard to the second issue the respondent must be sustained, for, while we have held in *Los Angeles & Salt Lake Railroad Co.*, 18 B. T. A. 168, that an amount paid in the taxable year to the Association of Railway Executives is a deductible expense, the petitioner

has failed to prove that during 1920 it paid the sum of $160.01 to the association as alleged.

We have found as a fact that during the year 1921 the petitioner incurred expenses totaling $20,998.14 in negotiating a settlement of its claims against the Director General of Railroads, and that such expense has not been heretofore allowed as a deduction from gross income for the year 1921. This expenditure constituted an ordinary and necessary business expense and should be allowed as a deduction for 1921, pursuant to section 234 (a) (1) of the Revenue Act of 1921.

The deficiencies will be redetermined in accordance with the foregoing opinion.

*Judgment will be entered under Rule 50.*